The bill is filed to obtain a construction of the will of Austin Jones in certain matters of doubt, and for an account and settlement of the estate.
Taking these matters in the order in which they are brought to the attention of the Court, we are of opinion, in the first place, that by the term, "wheat and corn on hand," is meant that only which was in the granaries of the testator at the time of his death. The terms used are not those commonly resorted to to designate growing crops or standing grain. The words crop, or growing crop, or standing crop, are those in popular use for such purpose. The force of the expression, "on hand," also leads to the conclusion that one who uses it has reference only to such things as are capable of present delivery.
In the second place, the Court declines expressing any opinion as to the controversy between the widow and the legatee, Turner, about the eighty acres of land. It is a matter which does not concern the executor in the settlement of the estate. The parties interested must settle it themselves, in such way as they may be advised is necessary and best.
The third enquiry the Court also declines answering, for the reason that it is hypothetical. No one of the negroes given to any of his children has died, and, therefore, the contingency has not arisen upon which alone the construction of the ninth clause of the will can become of any practical utility.
The share of stock in the Raleigh and Gaston Railroad Company isproperty to be sold under the eleventh clause of the will. The word is among the most comprehensive of those in use to signify (224) things which are owned, and subject to be owned and enjoyed.
The deposit of $900 in the Cape Fear Bank is not embraced, according to our opinion, among the debts which are directed in the eleventh clause of the will to be collected and invested for the benefit of his children.
We deem it unnecessary to discuss or decide, in this connection, the precise legal relations which subsist between a general depositor and a bank. Our duty is to ascertain the meaning of the testator, in the language employed by him in the clause in question, and the true rule is to interpret it according to its ordinary acceptation. The common understanding, we think, is to regard a deposit in the bank as cash *Page 178 
(at any rate prior to a demand and refusal), and not as a debt due. In making out a descriptive list of one's estate, it would be certainly so classed. We conclude, therefore, the testator did not intend to embrace the bank deposit by the use of such words as "all the debts due me."
Let an account conforming to these views be ordered.
PER CURIAM. Decree accordingly.
Cited: Redmond v. Commissioners, 106 N.C. 140.
(225)